**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0047n.06

No. 18-3630

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ALEJANDRA ISABEL VELASQUEZ-RODRIGUEZ; G.A.V.R., | ) ) ) | **FILED**<br>Jan 29, 2019<br>DEBORAH S. HUNT, Clerk |
| Petitioners, | ) ) | ON PETITION FOR REVIEW |
| v. | ) ) | FROM THE UNITED STATES<br>BOARD OF IMMIGRATION |
| MATTHEW G. WHITAKER, Acting Attorney General, | ) ) ) | APPEALS |
| Respondent. | ) ) | |

BEFORE: GRIFFIN, WHITE, and BUSH, Circuit Judges.

PER CURIAM. Alejandra Isabel Velasquez-Rodriguez and her minor daughter petition this court for review of an order of the Board of Immigration Appeals (BIA) dismissing their appeal from the denial of their applications for asylum and withholding of removal. As set forth below, we **DENY** the petition for review.

On December 12, 2015, Velasquez-Rodriguez and her daughter, both natives and citizens of Guatemala, entered the United States without being admitted or paroled. Upon their detention in Texas, the Department of Homeland Security served Velasquez-Rodriguez and her daughter with notices to appear in removal proceedings, charging them with removability as aliens lacking valid entry or travel documents when they sought admission to the United States. *See* 8 U.S.C. § 1182(a)(7)(A)(i)(I). On June 20, 2016, Velasquez-Rodriguez and her daughter appeared before

the immigration court for a Master Calendar Hearing, admitted the factual allegations set forth in the notices to appear, and conceded removability as charged.

Velasquez-Rodriguez filed an application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT), seeking relief based on her membership in a particular social group and listing her daughter as a derivative beneficiary. Velasquez-Rodriguez alleged that Juan Carlos Ramirez Perez, her former partner and the father of her daughter, subjected her to physical and mental abuse and confined her to their one-room house, and that he will abuse and confine her again if she returns to Guatemala. In a trial brief, Velasquez-Rodriguez asserted her membership in two social groups: (1) Guatemalan women viewed as property by virtue of their position in a domestic relationship and (2) Guatemalan women unable to leave a domestic relationship.

At the merits hearing before the immigration judge (IJ), Velasquez-Rodriguez testified about her abusive relationship with Ramirez Perez. The relationship began around September 2010 when Velasquez-Rodriguez was seventeen years old and lasted for a year and two months. About eight months into their relationship, Ramirez Perez began to physically and sexually abuse Velasquez-Rodriguez. The abuse, which occurred four or five times a week, left Velasquez-Rodriguez with bruises, scars, and a broken leg. According to Velasquez-Rodriguez, Ramirez Perez treated her like his slave, called her a prostitute, and considered her his property. For over five months, Ramirez Perez confined her to their one-room house, sometimes tying her up, and barred her from communicating with her family or anyone else.

Then, on December 23, 2011, Ramirez Perez took Velasquez-Rodriguez to visit her family for Christmas. While Ramirez Perez was out with his friends, Velasquez-Rodriguez's sisters saw her bruises, which prompted her to tell her family about the abuse. Upon Ramirez Perez's return, Velasquez-Rodriguez's family refused to let her leave with him. Ramirez Perez responded

aggressively, yelling and making threats. Ramirez Perez left the family's house and came back with a machete. During a struggle over the machete, Ramirez Perez bit Velasquez-Rodriguez's mother. Velasquez-Rodriguez testified that Ramirez Perez ran off, threatening to come back and lock her up again.

Velasquez-Rodriguez stayed with her parents after this incident. Soon after, in January 2012, she learned that she was pregnant with Ramirez Perez's child, who was born in August of that year. Velasquez-Rodriguez testified that she rarely left her family's house because she did not want to see Ramirez Perez and that, when she did leave, her father would accompany her. On the occasions that Velasquez-Rodriguez ran into Ramirez Perez, he yelled insults at her and threatened to kill her and her daughter. Ramirez Perez also sent Velasquez-Rodriguez threatening text messages. Velasquez-Rodriguez continued living with her parents until November 30, 2015, when she left with her daughter for the United States because she feared that Ramirez Perez would harm her and her daughter.

Velasquez-Rodriguez never reported Ramirez Perez's abuse to the police. She testified that, because Ramirez Perez had friends and relatives on the police force, she believed that the police would never solve anything and that he would have been able to reach an agreement with the police and even have her charged with a crime. Mario Velasquez, Velasquez-Rodriguez's father, also testified at the hearing from Guatemala by telephone. Velasquez stated that he notified the police about the machete incident, but "they couldn't find [Ramirez Perez] in any place." Velasquez testified that the police requested "some evidence" of the crime, but that he did not follow up because Ramirez Perez had threatened to kill the entire family.

After the hearing, the IJ issued a written decision denying Velasquez-Rodriguez's applications for asylum, withholding of removal, and CAT protection, and ordered her removal to Guatemala. The IJ found that Velasquez-Rodriguez and her father were credible witnesses and

that the harm suffered by Velasquez-Rodriguez at the hands of Ramirez Perez rose to a sufficiently severe level to constitute persecution. Additionally, the IJ found that Velasquez-Rodriguez had failed to demonstrate her inability to leave her domestic relationship, pointing out that she had ended her relationship with Ramirez Perez in December 2011, and that she had therefore failed to establish harm "on account of" her inability to leave the relationship. According to the IJ, Velasquez-Rodriguez had also failed to show that the Guatemalan government was unable or unwilling to control Ramirez Perez or that avoiding persecution by relocating to another part of Guatemala would be unreasonable. As a result, the IJ concluded that Velasquez-Rodriguez had failed to demonstrate past persecution or an objectively reasonable fear of future persecution on account of her membership in a particular social group and accordingly denied her asylum application. Because she had failed to establish eligibility for asylum, the IJ determined, Velasquez-Rodriguez had necessarily failed to satisfy the higher standards for withholding of removal and CAT protection.

Velasquez-Rodriguez filed an appeal, which the BIA dismissed. The BIA noted that Velasquez-Rodriguez had waived her request for CAT protection and that she had failed to preserve her daughter's independent eligibility for asylum. Affirming the IJ's denial of asylum and withholding of removal, the BIA agreed with the IJ that Velasquez-Rodriguez had failed to demonstrate that the Guatemalan government was unable or unwilling to protect her.

This timely petition for review followed. "Where, as here, the BIA issues its own decision rather than summarily affirming the IJ, the BIA decision is reviewed as the final agency decision, but the IJ's decision is also reviewed to the extent that the BIA adopted it." *Harmon v. Holder*, 758 F.3d 728, 732 (6th Cir. 2014) (citing *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009)). The BIA affirmed the IJ on the basis that Velasquez-Rodriguez had failed to establish that the Guatemalan government was unable or unwilling to protect her. Because the BIA's decision does

not rest on the IJ's other rulings, and because our review is limited to the issues decided by the BIA, *INS v. Orlando Ventura*, 537 U.S. 12, 16–17 (2002) (per curiam), Velasquez-Rodriguez's arguments about those rulings are misplaced.

We review the agency's factual findings, including the determination that the alien failed to establish eligibility for asylum, for substantial evidence, *Ramaj v. Gonzales*, 466 F.3d 520, 527 (6th Cir. 2006), reversing only if "any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B). "An alien who seeks asylum must establish that she meets the definition of a 'refugee,' which means a person who is unable or unwilling to return to her home country because of past persecution or a 'well-founded fear' of future persecution 'on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Bonilla-Morales v. Holder*, 607 F.3d 1132, 1136 (6th Cir. 2010) (quoting 8 U.S.C. § 1101(a)(42)). "Persecution is 'the infliction of harm or suffering by the government, or persons the government is unwilling or unable to control, to overcome a characteristic of the victim.'" *Kamar v. Sessions*, 875 F.3d 811, 818 (6th Cir. 2017) (quoting *Khalili*, 557 F.3d at 436).

Because her asylum claim is based on non-governmental conduct, Velasquez-Rodriguez must show that the Guatemalan government was unwilling or unable to control Ramirez Perez and protect her. *See Khalili*, 557 F.3d at 436. Velasquez-Rodriguez testified that she never reported Ramirez Perez's abuse to the Guatemalan authorities, citing his threats and contacts within the police. But Velasquez-Rodriguez offered no evidence to support her subjective belief that reporting Ramirez Perez's abuse would have been dangerous or futile. *See Keita v. Gonzales*, 175 F. App'x 711, 713 (6th Cir. 2006) (finding no record evidence to compel the conclusion that seeking governmental protection from the alien's abusive father would have been futile and potentially dangerous where the alien "testified that she *thought* seeking police protection would be useless, but she never offered any basis for her speculation") (emphasis in original). The case

cited by Velasquez-Rodriguez, *Matter of A-R-C-G*, 26 I. & N. Dec. 388 (BIA 2014), is distinguishable. In that case, a Guatemalan woman and her three children sought asylum based on domestic abuse. The BIA remanded the case to the IJ for further proceedings and gave the parties the opportunity to update the evidentiary record, noting that the alien "contacted the police several times but was told that they would not interfere in a marital relationship." *Id*. at 389. On remand, the BIA instructed the IJ to address whether the government was unwilling or unable to control the alien's husband. *Id*. at 395.

By contrast, Velasquez-Rodriguez never reported Ramirez Perez's abuse to the police and introduced no evidence that the Guatemalan authorities were unwilling or unable to protect Velasquez-Rodriguez from Ramirez Perez. When Velasquez-Rodriguez's father reported the machete incident, the police expressed a willingness to investigate and requested evidence, but her father did not follow up with the police because of Ramirez Perez's threats. The country-conditions evidence in the record further supports the agency's determination that Velasquez-Rodriguez had not shown that the Guatemalan government was unable or unwilling to protect her. The 2015 Human Rights Report and a news article submitted by Velasquez-Rodriguez both reflect that, although violence against women remains a problem in Guatemala, the government has taken concrete steps to address the problem. *See Hamzah v. Holder*, 428 F. App'x 551, 558 (6th Cir. 2011) (rejecting the alien's argument that the government was unwilling or unable to protect him where country reports showed that the government was making strides to prosecute the crimes at issue). Substantial evidence supports the denial of Velasquez-Rodriguez's asylum claim on the basis that she failed to establish that the Guatemalan government was unwilling or unable to protect her.

Because Velasquez-Rodriguez failed to establish her eligibility for asylum, she necessarily failed to "satisfy the more onerous burden for withholding of removal." *Kukalo v. Holder*, 744

F.3d 395, 402 (6th Cir. 2011) (quoting *Kaba v. Mukasey*, 546 F.3d 741, 751 (6th Cir. 2008)). Velasquez-Rodriguez forfeited any challenge to the agency's disposition of her claim for CAT protection by failing to raise the issue before this court. *See Shkabari v. Gonzales*, 427 F.3d 324, 327 n.1 (6th Cir. 2005).

Velasquez-Rodriguez makes a perfunctory argument that her daughter is independently eligible for relief. The BIA determined that her daughter's independent eligibility had not been preserved for appellate review. *See* 8 U.S.C. § 1252(d)(1) (requiring exhaustion of all available administrative remedies). Velasquez-Rodriguez fails to address the BIA's ruling, thereby forfeiting review of this issue. *See Shkabari*, 427 F.3d at 327 n.1.

For these reasons, we **DENY** the petition for review.